IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| FIREARMS POLICY COALITION, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States,<br><br>Defendant. | Case No. 4:24-cv-565 |

**DEFENDANT'S MOTION TO CLARIFY OR, IN THE
ALTERNATIVE, TO MODIFY THE PERMANENT INJUNCTION**

Defendant respectfully moves to clarify the Court's recently entered declaratory judgment and permanent injunction. Alternatively, if modification is necessary, Defendant respectfully moves under Federal Rule of Civil Procedure 59(e) for modification of the Court's final judgment.

This Court enjoined Defendant from enforcing the challenged federal criminal and regulatory provisions as to the organizational Plaintiffs, but Defendant does not know to whom the injunction applies because membership information is exclusively within the possession and control of the organizational Plaintiffs, who do not want to share it with the federal government. Defendant appreciates the importance of membership confidentiality, but at the same time, an injunction protecting unknown individuals is untenable and contrary to Federal Rule of Civil Procedure 65(d). Without clarification or modification, the final judgment places Defendant in an impossible position with respect to compliance. The Court should accordingly clarify that its declaratory judgment and permanent injunction are limited to the individual Plaintiffs and to

1

individuals who have been identified and verified to the government as members of the organizational Plaintiffs.

Moreover, this Court should clarify that its permanent relief applies only to those (whether identified or not) who were members of the organizational Plaintiffs when the operative complaint was filed (*i.e.*, when standing is determined). This limitation is necessary because the organizational Plaintiffs did not have standing to represent and obtain relief for members who did not yet exist and because equity should not incentivize retroactive free riding. Had Plaintiffs sought to secure relief broader in scope, then they could have sought to certify a class action; however, having declined to do so, Plaintiffs are limited to securing relief for the members they were empowered to represent when they filed suit.

## BACKGROUND

This case concerns Plaintiffs' challenge to 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(1), which bar individuals from possessing firearms in United States Post Offices. *See generally* Compl., ECF 1. Plaintiffs and Defendant cross-moved for summary judgment. *See* ECF 22–24, 27–31. As to the scope of relief, Plaintiffs refused to specify in their opening motion the injunctive relief they were seeking. *See* ECF 27 at 27. Defendant was therefore left to guess about the scope of relief that might be awarded and raised potential arguments based on that speculation. *See id.* at 27-28. Due to the uncertain nature of the requested relief, Defendant requested the opportunity to submit supplemental briefing on the scope of an appropriate remedy. *See id.* at 28-29. Defendant's reply brief reiterated the request for supplemental briefing in response to Plaintiffs' setting forth the scope of their proposed injunction for the first time in their opposition brief. *See* ECF 31 at 10.

On September 30, 2025, this Court entered a final declaratory judgment in favor of Plaintiffs and permanently enjoined Defendant from interpreting or enforcing 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(1) "to prohibit Plaintiffs' (and their members) possession and carrying of firearms inside of an ordinary United States Post Office or the surrounding Post Office property." Final Judgment ¶¶ 3–4, ECF 36. The Court did not provide Defendant with an opportunity to submit supplemental briefing about the scope of appropriate relief.

Shortly after the Court entered final judgment, Defendant's counsel contacted Plaintiffs' counsel. Ex. A. In that communication, Defendant asked whether Firearms Policy Coalition, Inc. and Second Amendment Foundation would provide Defendant with a verified list of their members as of the date of the complaint so that the federal government could identify the beneficiaries of the injunction and fully comply with the Court's final judgment. *Id.* Defendant also informed Plaintiffs that it would agree to a protective order that would limit the use of membership information to compliance with the final judgment. *Id.* Plaintiffs declined to provide membership information, and further took the position that "the judgment is not limited to members at the time the complaint was filed." *Id.* In Plaintiffs' view, membership information "is not necessary for the government to comply with the injunction . . . [because] [m]embers can identify themselves as such if questioned about carrying a firearm in a post office." *Id.*

Defendant now respectfully seeks clarification or, alternatively, modification of the scope of the Court's declaratory judgment and permanent injunction.

## LEGAL STANDARD

A party may seek "district court clarification" where it "ha[s] doubts about the meaning of any part of [an] injunction." *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir. 1969); *see also Second Amendment Found. v. ATF*, No. 3:21-cv-116, 2023 WL 4504587 (N.D. Tex. May

3

31, 2023) (granting motion to clarify whether court's preliminary injunction applied to plaintiff-foundation's members). The Supreme Court has explained that district courts have the "sound discretion" to "clarif[y]" the scope of their injunctions so parties are not left "in the dark as to their duty toward the court." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (stating that "we think courts would not be a pt to withhold [such] clarification"); *see Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting same).

On modification, Federal Rule of Civil Procedure 59(e) authorizes motions "to alter or amend a judgment," provided they are filed within 28 days of entry of the judgment.[1] This rule was promulgated to grant a district court "considerable discretion" to modify and rectify mistakes in the period immediately following the entry of final judgment. *ErgoBilt, Inc. v. Neutral Posture Ergonomics*, No. CIV.A. 397CV2548L, 2004 WL 1041586, at *12–13 (N.D. Tex. May 6, 2004); *see White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982). The Fifth Circuit has explained that "Rule 59(e) motions are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence." *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 423 (5th Cir. 2019). "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020).

## ARGUMENT

**I. The declaratory judgment and permanent injunction should be limited to the two individual Plaintiffs and to any identified and verified members of the organizational Plaintiffs when suit was filed.**

Defendant asks that this Court clarify or modify its declaratory judgment and permanent injunction to apply only to the individual Plaintiffs and to individuals who (A) have been identified

---

[1] The filing of a timely Rule 59(e) motion suspends the finality of the judgment, with the judgment's finality being restored only upon disposition of the motion. *See Banister v. Davis*, 590 U.S. 504, 508 (2020).

and verified as members of the organizational Plaintiffs and (B) were members of the organizational Plaintiffs when suit was filed. A final judgment with these limitations would be consistent with the specificity requirements of Rule 65(d), with the standing requirements of Article III, and with principles of equity. Conversely, absent these limitations, the injunction would be untenably vague and would erect enormous hurdles to compliance.

A. **To comply with Rule 65(d) and to ensure Defendant can comply with the injunction, the Court should clarify that its final judgment is limited to individuals identified and verified as members of the organizational Plaintiffs.**

The Court's declaratory judgment and permanent injunction should be limited in scope to members of the organizational Plaintiffs who have been identified and verified during this case. The reason for this request is twofold. First, a judgment that does not include this limitation is too vague to be understood and therefore fails to comply with Rule 65. Second, without clarification, the federal government may be unable to comply with the judgment. Plaintiffs have declined to provide a list of their members, which is their right—but without such a list, Defendant cannot determine and verify who is a member protected by the Court's judgment and who is not.

**Rule 65.** "Every order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). In other words, "[a]n injunction must simply be framed so that those enjoined will know what conduct the court has prohibited." *Scott v. Schedler*, 826 F.3d 207, 213 (5th Cir. 2016) (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981)). This drafting standard means that "[a]n ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Carter v. Local 556, Transp. Workers Union of Am.*, 138 F.4th 164, 204 (5th Cir. 2025) (quoting *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022)); *see also Moore v.*

*Tangipahoa Par. Sch. Bd.*, 864 F.3d 401, 407 (5th Cir. 2017) (stating that "individuals and entities subject to injunctions must have fair notice of the terms of the injunction").

"[A]n injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1)." *Carter*, 138 F.4th at 204 (quoting *Scott*, 826 F.3d at 211). Because "vagueness is a question of notice, *i.e.*, procedural due process," Rule 65(d) "embodies the elementary due process requirement of notice." *Scott*, 826 F.3d at 211, 212 (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 & n.19 (5th Cir. 1975)). "An injunction that fails to comply with [Rule 65's] specificity requirements must be vacated." *Carter*, 138 F.4th at 204.

Rule 65's specificity requirement "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Louisiana*, 45 F.4th at 846 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Carter*, 138 F.4th at 204 (quoting *Schmidt*, 414 U.S. at 476).

Courts have found injunctions too vague when they failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined. *See, e.g.*, *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (injunction prohibiting entity from contacting "any donor whose name is contained on Plaintiff's [trade secret donor] lists" was impermissibly vague because enjoined party had "no way to determine whether a given member of the public might happen to appear on" a list not in its possession); *NLRB v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers*, 419 F.2d 1282, 1283 (6th Cir. 1970) (injunction directing employers to cease from restraining or coercing the employees of a specified company "or the employees of any other employer within its jurisdictional territory" was too vague where, *inter*

*alia*, the injunction failed to define the specified jurisdiction "and thus it provides no means of defining the people for whom protection is sought"); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1116 (8th Cir. 1969) (injunction prohibiting defendants from contacting current or proposed customers of plaintiff company was "excessively vague" where, *inter alia*, neither the court's fact findings nor the injunction itself "determin[ed] the identity of the customers or proposed customers" so that it was "unclear whom the defendants may or may not contact").

To comply with an injunction, the enjoined party must know to whom the injunction applies. But here, Defendant does not know the identity of any members of the organizational Plaintiffs other than the two individual Plaintiffs who are parties to this litigation. Defendant also lacks the means to verify the identities of the other members, because such information is wholly within the possession and control of the organizational Plaintiffs.

**Administrability.** In a similar vein, an injunction is unenforceable when compliance with it is "factually impossible." *See United States v. Rylander*, 460 U.S. 752, 757 (1983). Here, the result of any injunction that would apply to a host of individuals unknown to Defendant would make compliance with such injunction a practical impossibility. Thus, to avoid the constant risk of contempt, the federal government may have to prohibit the application of the challenged law and regulation nationwide. But such a result would create a backdoor to universal injunctive relief, which undercuts the Supreme Court's recent holding that universal injunctions are impermissible where they grant relief "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.* 145 S. Ct. 2540, 2557, 2562–63 (2025). Organizations with large memberships could easily evade *CASA*'s holding by suing and then withholding their members' names, forcing the government to choose between halting enforcement everywhere or being at constant risk of contempt. To comply with the mandate of *CASA*, this Court's judgment

should only protect disclosed and verified members. *See id.* at 2566 (Thomas, J., concurring) ("Left unchecked, the practice of reflexive . . . third-party standing will undermine today's decision as a practical matter"); *Washington v. Trump*, 145 F.4th 1013, 1040 (9th Cir. 2025) (Bumatay, J., concurring and dissenting in part) (stating that courts should not award relief that would result in Plaintiffs obtaining a "backdoor to [a] universal injunction[]").

**Plaintiffs' Approach.** Plaintiffs argue that the Court need not limit its judgment to disclosed and verified members because "[m]embers can identify themselves as such if questioned about carrying a firearm in a post office." Ex. A. But that would not work. First, Plaintiffs' position would make Defendant's compliance wholly contingent on the acts of third parties who have no legal obligation to disclose their membership affiliation. This kind of arrangement would place the federal government at constant risk of contempt, because it could inadvertently enforce the challenged law against a person who happens to be an unknown member of one of the organizational Plaintiffs. The fatal problem with such an injunction is that on the record before this Court, it is unknown and unknowable which persons are members of the organizational Plaintiffs—information necessary for Defendant to know how to avoid contempt of court. *See Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) (stating that the "contempt power is a potent weapon" and that "Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid").

This lack of information about Plaintiffs' members is particularly problematic in this case where the Court has enjoined Defendant from "enforcing" a federal criminal statute. Enforcement of federal criminal law requires a variety of antecedent investigatory steps short of a formal charge in court, steps that are not covered by the injunction's language. Nevertheless, Plaintiffs might

8

argue that the Court's injunction could be construed to prohibit investigatory actions necessary to verify whether a person is a member of either organization. If Plaintiffs were to advance such a construction, then Defendants would not (and could not possibly) know who is protected by the judgment before initiating an investigation absent member information. Under such a construction, even the mere act of asking whether someone is a member of an organizational Plaintiff might be determined to run afoul of the injunction. Such a situation would place Defendant in an impossible position concerning compliance with the Court's injunction.

Even if an individual were to represent that he or she is a member of one of the organizational Plaintiffs, the federal government has no way of verifying the accuracy of that representation. As such, any person (member or not) aware of the judgment could walk into a post office with a firearm, claim he or she is a member of Firearms Policy Coalition, Inc. or Second Amendment Foundation, and evade enforcement of federal criminal law. That cannot be right.

Defendant appreciates that organizations have confidentiality interests in their membership information that are protected by the First Amendment. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 466 (1958). But the flipside of maintaining that confidentiality is that the organizational Plaintiffs cannot secure broad permanent relief for all their unknown members.[2]

In sum, Defendant asks that the Court clarify or modify the scope of its judgment to include only members of the organizational Plaintiffs who have been identified and verified during this litigation.

---

[2] The federal government, as a general policy, does not seek to compel disclosure of private organization's membership and does not ask the Court to do so here. The government asks that the judgment apply only to identified members while still leaving Plaintiffs with the choice to disclose their membership entirely, partially, or not at all. The federal government reiterates that it would agree to a protective order that limits use of any member information that Plaintiffs may choose to provide to compliance with the Court's judgment in this case.

**B.       To conform with Article III and principles of equity, this Court should clarify that its judgment is limited to members of the organizational plaintiffs when suit was filed.**

Regardless of how the Court resolves the issue of unidentified members, both Article III and equitable principles require that the judgment be limited to individuals who were members of one of the organizational Plaintiffs *at the time this suit was filed*.

Starting with Article III, an organization has associational standing to bring suit on behalf of its members only if, *inter alia*, "its members would otherwise have standing to sue in their own right." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).  And standing is determined when the operative complaint is filed.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 n.3 (5th Cir. 2005).

A court may only grant relief to plaintiffs who have standing to sue.  *CASA*, 145 S. Ct. at 2557, 2562–63 (2025); *see Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973) (confining courts to "adjudicating rights in particular cases between the litigants brought before the Court").  And because "standing is not dispensed in gross," any permanent relief must be tailored only to those specific plaintiffs who have established standing "for each form of relief that they seek."  *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

In applying these standing principles here, this Court should grant relief only to individuals who were members of Firearms Policy Coalition, Inc. or Second Amendment Foundation at the time the complaint was filed on June 18, 2024.  *See* Compl.  Plaintiffs' associational standing is temporally anchored to June 18, 2024.  And because the Court can only grant relief to Plaintiffs with standing to sue as of the filing of the operative complaint, Plaintiffs cannot represent and obtain relief for members who did not yet exist at the filing of the complaint.  If it were otherwise,

10

the scope of the Court's final judgment would be constantly fluctuating with changes in membership. Worse, without a temporal limitation, membership could become a ticket to prosecutorial immunity; any non-member investigated or charged under 18 U.S.C. § 930(a) could join Firearms Policy Coalition, Inc. or Second Amendment Foundation after the fact and potentially expose the government to contempt if it proceeds with prosecution. Had Plaintiffs wanted to secure broader relief, they could have sought to certify a class action; if successful, that would have provided relief to the class. But Plaintiffs did not pursue that path, so they are limited to securing relief for the members they were empowered to represent when they sued.

Likewise, equity has long limited mechanisms whereby potentially affected individuals may "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). To do otherwise would be to "create[] the possibility of asymmetrical preclusion," enabling the members of the organizational plaintiffs to enjoy the benefits of a favorable judgment while escaping the burdens of an adverse one. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 403 (2024) (Thomas, J., concurring); *see also McCoy v. ATF*, 140 F.4th 568, 573 n.1 (4th Cir. 2025) (determining that plaintiffs could not "receive the benefit of class-wide relief when they strategically withheld their class certification motion to avoid being bound by an unfavorable ruling").

Extending injunctions to future members of organizational plaintiffs is inequitable, because it creates a "heads I win, tails you lose" result. On the one hand, if an organization fails in its legal challenge, nothing prevents non-members from filing individual suits to challenge the same law in other jurisdictions. On the other hand, when an organization prevails in its suit, latecomers who join the organization as free riders after the decision would reap the full benefits of the favorable

judgment. Equity should not impose such an asymmetrical, lose-lose result on the government. *See CASA*, 145 S. Ct. at 2558 ("[T]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation omitted)); *id.* at 2559 (identifying one of the criticisms of universal injunctions as "operat[ing] asymmetrically: A plaintiff must win just one suit to secure sweeping relief. But to fend off such an injunction, the Government must win everywhere").

Therefore, in accordance with Article III and with principles of equity, this Court should clarify or modify the scope of its declaratory judgment and permanent injunction to persons who were members of the organizational Plaintiffs at the time suit was filed.

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court clarify or modify its declaratory judgment and permanent injunction as set forth above.

Dated: October 28, 2025    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch

  /s/ Daniel Riess
SAMUEL S. HOLT (Colorado Bar No. 59613)
DANIEL RIESS (Texas Bar No. 24037359)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-3098
Daniel.Riess@usdoj.gov

*Attorneys for Defendant*

## CERTIFICATE OF CONFERENCE

Counsel for Defendant has conferred with counsel for Plaintiffs, and Plaintiffs oppose the relief sought in this motion.

*/s/ Daniel Riess*

## CERTIFICATE OF SERVICE

I certify that on October 28, 2025, I electronically filed the foregoing and thereby caused a copy to be served on counsel of record.

*/s/ Daniel Riess*