**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FIREARMS POLICY COALITION, INC., SECOND AMENDMENT FOUNDATION, GAVIN PATE, and GEORGE MANDRY,<br><br>     *Plaintiffs*,<br><br> v.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States**,**<br><br>     *Defendant*. | CIVIL ACTION NO. 4:24-cv-565 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY OR,**
**IN THE ALTERNATIVE, TO MODIFY THE PERMANENT INJUNCTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................... ii

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................3

    I.    This Court's order granting relief to FPC and SAF's membership complies with Supreme Court precedent....................................................................................................................3

    II.    The Government's arguments for limiting relief to the individual Plaintiffs run contrary to this binding precedent........................................................................................................4

        A.  Rule 65 does not require an injunction limited to the specific individual plaintiffs. ....................................................................................................................4

        B.  Compliance with the injunction is neither "factually impossible" nor does it undercut *CASA*. ...................................................................................................7

        C.  Article III is no obstacle to the current injunction. ...............................................14

CONCLUSION.....................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A.B. v. Haw. State Dep't of Educ.*,
    30 F.4th 828 (9th Cir. 2022) ...................................................................15

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*,
    469 F.3d 129 (D.C. Cir. 2006) ...........................................................15, 16

*Agostini v. Felton*,
    521 U.S. 203 (1997) ...............................................................................9

*Ala. Legis. Black Caucus v. Alabama*,
    575 U.S. 254 (2015) ..............................................................................16

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
    792 F. Supp. 3d 985 (N.D. Cal. 2025) ...................................................6

*American Red Cross v. Palm Beach Blood Bank*,
    143 F.3d 1407 (11th Cir. 1998) .............................................................5

*Art & Antique Dealers League of Am., Inc. v. Seggos*,
    121 F.4th 423 (2d Cir. 2024) .................................................................6

*Beatty v. Kurtz*,
    27 U.S. (2 Pet.) 566 (1829) ..............................................................10, 11

*Chancey v. May*,
    24 Eng. Rep. 265 (Ch. 1722) ...............................................................10

*Christian Emps. All. v. U.S. Equal Opportunity Comm'n*,
    719 F. Supp. 3d 912 (D.N.D. 2024) ..................................................6, 15

*Comput. & Commc'ns Indus. Ass'n v. Paxton*,
    747 F. Supp. 3d 1011 (W.D. Tex. 2024) ...............................................6

*Cullen v. Duke of Queensberry*,
    28 Eng. Rep. 1011 (Ch. 1781) .............................................................10

*E.W. Bliss Co. v. Struthers-Dunn, Inc.*,
    408 F.2d 1108 (8th Cir. 1969) ...............................................................5

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) .........................................................................17, 18

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) .................................................................16

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*,
    740 F. Supp. 3d 509 (N.D. Tex. 2024) ...................................................7

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ...................................................................3, 7, 9, 15

*Lara v. Comm'r Pa. State Police*,
    125 F.4th 428 (2025) .............................................................................17

*Lederman v. United States*,
    131 F. Supp. 2d 46 (D.D.C. 2001) ................................................................12

*Leigh v. Thomas*,
    28 Eng. Rep. 201 (Ch. 1751) .......................................................................10

*Nat'l Ass'n for Gun Rts., Inc. v. Garland*,
    697 F. Supp. 3d 601 (N.D. Tex. 2023) ...........................................................6

*Nat'l Ass'n of Realtors v. Nat'l Real Est. Ass'n*,
    894 F.2d 937 (7th Cir. 1990) ...................................................................6, 7

*New York State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) ........................................................................................3

*NLRB v. Teamsters, Chauffeur's Helpers & Taxicab Drivers, Local 327*,
    419 F.2d 1282 (6th Cir. 1970) ....................................................................5

*NRA v. ATF*,
    700 F.3d 185 (5th Cir. 2012) .......................................................................3

*Planned Parenthood Fed'n of Am., Inc. v. Kennedy*,
    792 F. Supp. 3d 227 (D. Mass. 2025) ...........................................................6

*Reese v. ATF*,
    127 F.4th 583 (5th Cir. 2025) ....................................................................16

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) .......................................................................4

*Speech First, Inc. v. Sands*,
    144 S. Ct. 675 (2024) ................................................................................16

*Speech First, Inc. v. Sands*,
    69 F.4th 184 (4th Cir. 2023) ......................................................................16

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ...................................................................................3

*Texas Gun Rts, Inc. v. ATF*,
    697 F. Supp. 3d 593 (N.D. Tex. 2023) ...........................................................7

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)...................................................................1, 7, 8, 9, 10

*UAW v. Brock*,
    477 U.S. 274 (1986)...........................................................................3, 14, 18

*United States v. Mendoza*,
    464 U.S. 154 (1984)...............................................................................17, 18

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................3, 6

*Watterson v. ATF*,
    No. 23-11157, 2024 WL 3935446 (5th Cir. Aug. 26, 2024) .........................7

*Worth v. Jacobson*,
    108 F.4th 677 (8th Cir. 2024) ..............................................................................17

### Statutes

18 U.S.C.
    § 922(g)(3) ..........................................................................................................13
    § 1001 ..................................................................................................................13

Fed. R. Civ. P. 65(d)(1)(B), (C) .....................................................................................4

### Other Authorities

ATF Form 4473 (Aug. 2023), https://perma.cc/L24D-GF2C ..........................................13

ATF Reply Br., *Elite Precision Customs LLC v. ATF*, No. 4:25-cv-00044 (N.D. Tex. Aug. 13, 2025), Doc. 42.........................................................................................................1

Samuel Bray, *Multiple Chancellors: Reforming the National Injunction*,
    131 Harv. L. Rev. 417 (2017)..............................................................................8

Br. of Federal Respondents, *W. Va. Citizens Def. League, Inc. v. ATF*,
    No. 25-132 (U.S. Oct. 20, 2025)..........................................................................17

Br. in Supp. of Defs.' Prop. J., *Reese v. ATF*, No. 6:20-cv-01438,
    (W.D. La. Sep. 2, 2025), Doc. 79-2 .....................................................................1

*Enforcement*, Black's Law Dictionary (12th ed. 2024) .............................................12

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) .......12

Order, *Reese v. ATF*, No. 23-20033 (5th Cir. Jan. 30, 2024), Doc. 92-2 .....................16

Joseph Story, Commentaries on Equity Pleadings (3d ed. 1844) ...........................10, 11

## INTRODUCTION

In this case, two national membership organizations that work to promote and defend the rights protected by the Second Amendment established that the federal ban on carrying firearms in post offices and on post office property is unconstitutional. Now the Government, in a bid to render that victory practically meaningless for all the members of those organizations except for the two who participated in this suit directly, seeks to narrow the scope of the injunctive relief this Court has ordered to exclude from coverage anyone whom the organizations have not identified to the Government as a member and anyone who was not a member at the time the complaint was filed.

The Government suggests, at a few points in its brief, that these limitations follow from the Supreme Court's recent decision restricting the issuance of "universal injunctions" in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). They do not. *CASA* left unchanged the Supreme Court's longstanding practice of recognizing an association's standing on behalf of its members to seek relief *for* its members. Rather, the Government's motion in this case is of a piece with its broader strategy, that has become apparent in the wake of *CASA*, to further restrict the remedial powers of the district court. *See, e.g.*, Def's. Mot. to Clarify at 11–13, Doc. 39 (Oct. 28, 2025) ("Gov't Br."), ATF Reply Br., *Elite Precision Customs LLC v. ATF*, No. 4:25-cv-00044 (N.D. Tex. Aug. 13, 2025), Doc. 42; *see* Br. in Supp. of Defs.' Prop. J. at 6–13, *Reese v. ATF*, No. 6:20-cv-01438 (W.D. La. Sep. 2, 2025), Doc. 79-2. What the Government is seeking is the ability to enforce as broadly as possible, even against members of the associations that brought this suit to vindicate their rights, a law that this Court has held unconstitutional. That requires a *change* in the law, not application of it. Whether it will ultimately prevail is for the Supreme Court to decide, but this Court is bound to reject the Government's novel arguments for narrowing relief.

## BACKGROUND

Plaintiffs are two individuals, Gavin Pate and George Mandry, and two organizations that count them as members, Firearms Policy Coalition, Inc. and Second Amendment Foundation. Plaintiffs brought this case to challenge the laws and regulations that bar peaceable Americans who are otherwise qualified to carry arms for self-defense from doing so at United States Post Offices. Following cross-motions for summary judgment, including briefing as to the appropriate scope of relief, *see* Def's. Mot. for Summ. J. & Opp'n at 27–29, Doc. 27 (Nov. 27, 2024); Pls.' Reply in Supp. of their Mot. for Summ. J. at 26–27, Doc. 29 (Dec. 18, 2024), this Court held in Plaintiffs' favor and entered an order "ENJOIN[ING] the Government from … [i]nterpreting or enforcing [the challenged restrictions] to prohibit Plaintiffs' (and their members) possession and carrying of firearms inside of an ordinary United States Post Office or the surrounding Post Office property." Mem. Op. & Order at 17, Doc. 35 (Sep. 30, 2025).

Following entry of that order, and to ensure that the Government was complying with its terms, counsel for Plaintiffs wrote to counsel for the Government to "confirm that the injunction in this case is being implemented for the individual plaintiffs as well as the members of SAF and FPC across the country." Ex. 1 to Gov't Br. at 3, Doc. 39-1 (Oct. 28, 2025). The Government, however, informed Plaintiffs' counsel that it was taking the position that, unless SAF and FPC voluntarily disclosed their members' identities, the Government would take the position that compliance was impossible and seek "clarification or, in the alternative … reconsideration, asking that the Court's judgment vis-à-vis the organizational plaintiffs be limited to individuals who (A) were members of the organizational plaintiffs when suit was filed and (B) have been identified and verified as members of the organizational plaintiffs during this case." *Id.* The instant motion followed.

2

## ARGUMENT

**I.  This Court's order granting relief to FPC and SAF's membership complies with Supreme Court precedent.**

The Supreme Court has repeatedly recognized, including as recently as two years ago, that organizations such as FPC and SAF have standing to sue on behalf of their injured members. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 198–99 (2023); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). That standing is explicitly predicated on the fact that an organization can *get relief* for its members who are not personally before the Court: "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Hunt*, 432 U.S. at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). "The doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *UAW v. Brock*, 477 U.S. 274, 290 (1986). Indeed, the Supreme Court has explicitly condoned relief for organizational members, and it rejected the notion that a union suing on behalf of its thousands of members had to bring a class action to secure relief for those members. *Id.* at 288–90.

Under that precedent, Plaintiffs FPC and SAF must have the ability to secure relief for their members. These associations have consistently asserted the rights of their members, and the Fifth Circuit has previously held that an organization can sue for the benefit of its members where a challenged law infringes their Second Amendment rights. *See NRA v. ATF*, 700 F.3d 185, 191–92 (5th Cir. 2012), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (establishing "NRA's associational standing on behalf of its 18-to-20-year-old[]

members"). This Court's original injunction, providing relief to all of Plaintiffs' members, was consistent with this controlling law.

## II. The Government's arguments for limiting relief to the individual Plaintiffs run contrary to this binding precedent.

The Government argues that this Court's injunctive order extending relief to Plaintiffs' members violated Rule 65's specificity requirements and Article III's limitations on the authority of courts. This Court should be persuaded on neither count—indeed, in both cases, the Government's arguments are at odds with binding precedent governing associational standing.

### A. Rule 65 does not require an injunction limited to the specific individual plaintiffs.

Under Federal Rule of Civil Procedure 65(d), an injunction must "state its terms specifically" and "describe in reasonable detail" what the defendant is forbidden to do. FED. R. CIV. P. 65(d)(1)(B), (C). "The drafting standard has been described as 'that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.'" *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (citation omitted). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* at 212 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

The Government claims that the phrase "Plaintiffs' (and their members)" is inherently vague and argues that it is similar to injunctions in other cases where Courts have found the language "failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined." Gov't Br. at 6. But the language is not vague at all. It describes exactly who is covered by the injunction—members of FPC and SAF. And there is an exceedingly easy way for the Government to determine whether any given person is a member of FPC or SAF: it can ask.

That defeats the government's analogy to the cases it relies on for support. *See id*. For instance, in *American Red Cross v. Palm Beach Blood Bank, Inc.*, the injunction was impermissibly vague because it barred the defendant from possessing or using "any … documents that contain trade secrets that are the proprietary property of Plaintiff[.]" 143 F.3d 1407, 1409 (11th Cir. 1998). But unlike a trade secret document, a member of FPC or SAF can identify himself as such to the Government, and the scope of the Court's injunction as to that individual would be perfectly clear. Furthermore, the Eleventh Circuit panel went on to explain that while it "would not expect an injunction in a case such as the one at bar to describe with particularity each of the documents that [the defendant] might misappropriate," it did "think that the district court's injunction should put [the defendant] on notice as to the types of information … to which it applies." *Id*. The Government's position here is precisely the opposite. Plaintiffs have identified a type of individual—their members—and the Government responds that it needs to have all their names. Nothing in *American Red Cross* requires so much.

The problem in *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, was similar to the problem with trade secret documents. 408 F.2d 1108 (8th Cir. 1969). There, the injunction forbade one party from "contacting or disclosing customers or proposed customers of plaintiff," but without contacting them, the defendant had no way to know whether they *were* customers of plaintiff, rendering compliance effectively impossible. *Id.* at 1115–16 (citation omitted). In this case, the Government is in no way restrained from contacting Plaintiffs' members, it merely cannot enforce the Post Office Ban against them to deprive them of the right to carry on postal property.

Finally, *NLRB v. Teamsters, Chauffeur's Helpers & Taxicab Drivers, Local 327* supports Plaintiffs' position. 419 F.2d 1282 (6th Cir. 1970). In that case, an NLRB order forbade several trade unions from "[r]estraining or coercing the employees of Hartmann Luggage Company or the

employees of any other employer within its jurisdictional territory in the exercise of the rights guaranteed them." *Id.* at 1283–84 (citation omitted). The Sixth Circuit held the order was vague because it did not define the jurisdictional territory "and thus it provides no means of defining the people for whom protection is sought." *Id*. at 1283. But the court recognized that that problem could be easily rectified by an order defining the terms more specifically. In other words, the problem was not that the injunction did not provide the identity of everyone protected but provided inadequate information to define them as a group—here, the injunction's limitation to Plaintiffs' members accomplishes that.

Far from being inherently vague, references to the members of an organizational plaintiff are perfectly ordinary features of injunctions in suits of this type. *See Nat'l Ass'n of Realtors v. Nat'l Real Est. Ass'n*, 894 F.2d 937, 942 (7th Cir. 1990) (Posner, J.) ("[A]n association is free as a matter of federal law to seek an injunction against wrongs that injure its members."). Indeed, the Supreme Court noted that "in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind." *Warth*, 422 U.S. at 515 (citing *Nat'l Motor Freight Ass'n v. United States*, 372 U.S. 246 (1963); *Data Processing Serv. v. Camp*, 397 U.S. 150 (1970)). Examples from very recent history abound. *See Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 443 (2d Cir. 2024) ("We direct the district court to grant injunctive relief barring the enforcement of the Display Restriction against Plaintiffs and their members."); *Planned Parenthood Fed'n of Am., Inc. v. Kennedy*, 792 F. Supp. 3d 227, 271 (D. Mass. 2025); *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 792 F. Supp. 3d 985, 1006 (N.D. Cal. 2025); *Comput. & Commc'ns Indus. Ass'n v. Paxton*, 747 F. Supp. 3d 1011, 1044 (W.D. Tex. 2024); *Christian Emps. All. v. U.S. Equal Opportunity Comm'n*, 719 F. Supp. 3d 912, 919 (D.N.D. 2024); *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 697 F. Supp. 3d 601, 634 (N.D. Tex.

2023) (O'Connor, J.); *Tex. Gun Rts, Inc. v. ATF*, 697 F. Supp. 3d 593, 601 (N.D. Tex. 2023) (O'Connor, J.), *appeal dismissed as moot*, *Watterson v. ATF*, No. 23-11157, 2024 WL 3935446 (5th Cir. Aug. 26, 2024); *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509, 536 (N.D. Tex. 2024).

The prevalence of this language should not be surprising. The logic of the Supreme Court's decisions confirming that associations have standing "on behalf of" their members effectively compel the availability of relief that extends to those members, or else a case would not satisfy the requirement that "neither the claim asserted *nor the relief requested* requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343 (emphasis added); *see Nat'l Ass'n of Realtors*, 894 F.2d at 941. Indeed, the Supreme Court has, since *Warth*, not questioned its "reasonabl[e] … suppos[ition] that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Hunt*, 432 U.S. at 343. The Government's opposition to relief extending to Plaintiffs' members must be seen for what it is—irreconcilable with the binding decisions of the United Supreme Court.

### B. Compliance with the injunction is neither "factually impossible" nor does it undercut *CASA*.

The Government argues that the extension of relief to Plaintiffs' members also makes compliance "factually impossible." Gov't Br. at 7 (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)). Immediately after suggesting that compliance is a factual impossibility, the Government suggests one way it could comply: by declining to enforce "the challenged law and regulation nationwide." Gov't Br. at 7. But this, the Government claims, would "undercut[] the Supreme Court's recent holding," *id.*, that courts cannot grant so-called "universal injunctions" that "are broader than necessary to provide complete relief to each plaintiff with standing to sue," *CASA*, 606 U.S. at 861. But "factually impossible" is the standard, not "narrow enough to avoid

7

comparison to nationwide injunctions." Indeed, if the Government had no other way to cease enforcing the Post Office Ban against FPC's and SAF's members, *CASA* suggests that the correct course would be to *enjoin enforcement of the law entirely*, since by the Government's own admission, no lesser relief could resolve the deprivation of Plaintiffs' members' constitutional rights. As *CASA* explained, the "complete-relief principle has deep roots in equity," focuses on whether "an injunction will offer complete relief to the plaintiffs before the court," and leads to injunctions that "sometimes advantage nonparties." 606 U.S. at 851–52 (cleaned up). If a universal injunction were necessary to provide complete relief to FPC and SAF, then a universal injunction would be appropriate. Under an appropriately crafted, "plaintiff-protective injunction, the burden is on the defendant to figure out how to comply." Samuel Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 417, 479 (2017). And if the Government had no other option than to fully cease enforcement then that would be a "factually []possible" way for it to comply with the injunction. Gov't Br. at 7 (quoting *Rylander*, 460 U.S. at 757).

There are several other reasons why, even if the Government were to choose to entirely cease enforcement of the Post Office Ban, that would not "undercut" *CASA*. First, *CASA* limits what a court can order, not what the Government can do. Courts can grant broad injunctions where necessary to afford *the parties before it* "complete relief." *See CASA*, 606 U.S. at 851–53. Doing so here requires enjoining enforcement as to Plaintiffs' members. If, faced with a choice about how to comply with the injunction, the executive *chooses* to cease enforcement more broadly, that does not make this Court's party-specific order noncompliant with *CASA*. *See* Bray, *supra*, at 479.

Second, even if *CASA* could be considered to have called into question the practice of awarding associational relief to associational plaintiffs' members, it did not address the issue directly. The closest the Government can muster is Justice Alito's statement, in concurrence, that

"Left unchecked, the practice of reflexive state third-party standing will undermine today's decision as a practical matter." *CASA*, 606 U.S. at 867 (Alito, J., concurring); *see* Gov't Br. at 8 (quoting *CASA*, 606 U.S. at 867 (Alito, J., concurring), but eliding the word "state"). But Justice Alito's statement, in addition to failing to garner support of a majority of the Court, was directed specifically to concerns about state third-party standing, not associational standing. The two are meaningfully different; the majority held that the associational plaintiffs before it were not entitled to relief on behalf of nonmembers but left open the question of whether the state parties might be. *CASA*, 606 U.S. at 852–53 ("The individual and associational respondents are therefore wrong to characterize the universal injunction as simply an application of the complete-relief principle. … The complete-relief inquiry is more complicated for the state respondents."). And in any event, at most, Justice Alito's statement could be read as calling attention to a reason why *CASA* might not have a major practical effect, not to suggest that third party standing (state or otherwise) was inconsistent with *CASA*.

In contrast, the caselaw that is directly on point unanimously holds that association-wide injunctions are within this Court's power. *See, e.g.*, *Hunt*, 432 U.S. at 343. As the Supreme Court has explained many times, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). This Court is therefore bound to follow the practices described in the *Warth*, *Hunt*, and *Brock* line of cases and leave to the Supreme Court the task of determining whether *CASA* requires a reassessment.

Third, although it is largely academic for present purposes, given that this Court is bound to follow *Warth* and its progeny, applying *CASA*'s mode of analysis to this case demonstrates that the relief Plaintiffs seek *is not* contrary to *CASA*. *CASA* held that under "well-established precedent, the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding." 606 U.S. at 856 (quoting *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). Although it was the "general rule in Equity … that all persons materially interested, either legally, or beneficially, in the subject-matter of a suit, are to be made parties to it … however numerous they may be, so that there may be a complete decree, which shall bind them all," that rule was "subject to certain exceptions." JOSEPH STORY, COMMENTARIES ON EQUITY PLEADINGS 83 (3d ed. 1844). Included among those exceptions were cases "where the parties form a voluntary association for public or private purposes, and those, who sue, or defend, may fairly be presumed to represent the rights and interests of the whole[.]" *Id.* at 119. Indeed, well before the Founding, at least as early as 1722, the High Court of Chancery in England recognized that voluntary associations could "sue on behalf of themselves and all the rest. … of the same undertaking" without "making all the members parties." *Chancey v. May*, 24 Eng. Rep. 265, 265 (Ch. 1722). The English courts continued to recognize this practice leading right up to the Founding. *See Leigh v. Thomas*, 28 Eng. Rep. 201, 201 (Ch. 1751) ("[O]ne may bring a bill in behalf of himself and the rest, and they are ordered to come in under the decree[.]"); *Cullen v. Duke of Queensberry*, 28 Eng. Rep. 1011, 1011 (Ch. 1781) (rejecting, in a suit over a contract to acquire a house for a ladies club, the defendant's argument that all 60 members of the club should be made parties to the suit). And early in our country's history the Supreme Court embraced this practice (in an opinion by Justice Story) when it held that "certain persons, belonging to a voluntary society, and having a common interest, may sue in behalf

10

of themselves and others having the like interest, as part of the same society; for purposes common to all, and beneficial to all." *Beatty v. Kurtz*, 27 U.S. (2 Pet.) 566, 585 (1829). There is thus every reason to think that the associational standing line of cases is consistent with the equity jurisdiction of federal courts and has not been undermined at all by *CASA*.

Finally, this case does not implicate *CASA* even in effect because it would be simple for the Government to implement the Court's order, as written, without extending relief universally. It could simply decline to enforce the law against those persons who identify themselves as a member of FPC or SAF and are therefore entitled to "come in under the decree, and take the benefit of it." STORY, *supra*, at 118.

To this, the Government simply replies: "[T]hat would not work." Gov't Br. at 8. But the Government's attempts to show why it would not work fall short of the mark. First, it complains that the members' identities are "unknown and unknowable" and that therefore the Government risks contempt because its compliance would be "wholly contingent on the acts of third parties who have no legal obligation to disclose their membership affiliation." *Id*. To the extent that the Government's concern here is that it might be held in contempt for enforcing the Post Office Ban against an individual who is a member of FPC or SAF but refuses to disclose that information to the Government, Plaintiffs agree that the Government should not be held in contempt for enforcing the law against an individual who did not disclose membership. Plaintiffs therefore would not oppose altering the language of the order to make clear that it is limited to members who identify themselves as such to the Government, though Plaintiffs think that alteration is unnecessary under a fair reading of the order as it currently stands.

That does not end the Government's objections. It claims that even where an individual properly identifies himself, it is in an impossible predicament because "the Court's injunction

could be construed to prohibit investigatory actions necessary to verify whether a person is a member of either organization" and that "the federal government has no way of verifying the accuracy" of an individual's claim to be a member of one of the associations. *Id*. at 9. Neither objection makes the injunction unworkable. As for the claim that merely asking an individual who is carrying a firearm in a post office whether they are a member of an association, that is not something the Government is enjoined from doing under the plain language of the order, which prohibits "[i]nterpreting or enforcing" the Post Office Ban "to prohibit Plaintiffs' (and their members) possession and carrying of firearms" at a post office. Mem. Op. & Order at 17. Even if, as the Government suggests, "enforcing" is read to encompass "a variety of antecedent investigatory steps short of a formal charge in court," Gov't Br. at 8, asking an individual whether he or she is protected by this Court's injunction does not prohibit anyone from possessing or carrying firearms at a post office. The idea appears to be that the word "enforcing" is simply too vague to *ever* be used in an injunction benefitting an association's members, and that simply cannot be right. The fundamental feature of a prohibitory injunction is to "enjoin the executive from enforcing [a law]." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 987 (2018). The ordinary meaning of "enforcement" encompasses things like "arrest; issuance of a warning, citation, or ticket; and referral for prosecution," *Lederman v. United States*, 131 F. Supp. 2d 46, 64 (D.D.C. 2001), *i.e.*, acts that "compel[ ] compliance with a law," *Enforcement*, BLACK'S LAW DICTIONARY (12th ed. 2024). Enforcement does not include preliminary investigative steps needed to determine whether an individual is protected by an injunction in the first place. What is more, as explained above, the injunction should not be interpreted to reach actions taken before the Government is informed that an individual is a member of FPC or SAF.

Furthermore, the Government's own position undercuts the force of this objection, because it accepts that it *could* abide by an injunction with respect to members identified by Plaintiffs in this litigation, such as the Individual Plaintiffs. *See* Gov't Br. at 9. But the injunction does not require the Individual Plaintiffs to wear name tags every time they carry in a post office, so the Government will have to take investigatory steps (e.g., asking about their identity) to implement even the reach of the injunction that the Government does not quarrel with. In other words, if the Government believes that merely asking whether an individual is covered by the injunction is somehow "enforcing" the Post Office Ban, there is no amount of information about Plaintiffs or their members that Plaintiffs could give the Government that would render compliance possible.

As to the objection that the Government has no way of verifying the accuracy of an individual's claim to membership, that is not an impediment to implementing the injunction. Individuals are heavily incentivized to tell the truth to the government; a material falsehood is a felony. *See* 18 U.S.C. § 1001. And the Government already relies on people to tell the truth with respect to other firearms restrictions with potentially much more at stake. For instance, an individual "who is an unlawful user of or addicted to any controlled substance" is prohibited from possessing a firearm. *Id*. § 922(g)(3). While it can run a background check to search for a disqualifying conviction and identify felons, the Government has no real way of determining whether an individual is addicted to a controlled substance at the point of sale, and so it relies on individuals to state that they are not, under penalty of perjury. *See* ATF Form 4473 (Aug. 2023), https://perma.cc/L24D-GF2C (Question 21.f). There is no reason that the same should not be more than adequate here, given that what is at stake is not a prohibited person acquiring a firearm but merely an individual peaceably carrying in a place where this Court has held the Second Amendment forbids the Government from restricting firearms in the first place.

### C.  Article III is no obstacle to the current injunction.

The Government separately argues that relief should "be limited to individuals who were members of one of the organizational Plaintiffs *at the time this suit was filed*" because associational standing is predicated on at least one member having standing, and "standing is determined when the operative complaint is filed." Gov't Br. at 10 (emphasis in original). While the Government is correct that *standing* is determined at the time a complaint is filed, that has nothing to do with the ultimate *relief* that is ordered by the Court; these are separate principles. Once the case is underway, the continued existence of members who are harmed by the challenged policy becomes an issue of *mootness*, not one of standing. And while these issues are related, the Government's conflation highlights the error of the Government's position. An association's membership may change over the life of a case, and an association's case may be kept from mootness by the identification of *new* members who would otherwise have standing in their own right—as is commonplace in cases challenging time-bound matters such as age-based restrictions or school policies. Because FPC and SAF had standing and at the beginning of this suit, and have maintained it through this Court's judgment, the requirements of Article III are met and relief should flow to all of their members, both now and in the future, regardless of when they joined.

The Government's position is inconsistent with the Supreme Court's treatment of associational standing. To begin, the Court has explained that the very *purpose* of the doctrine is to allow organizations to seek to "vindicate the interests of [their] members" in court. *UAW*, 477 U.S. at 289–90. The Court has, in fact, favorably compared associational litigation to class actions, noting that where "a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital." *Id*. at 289. The Government's position,

14

which instead treats associational litigation as merely a circuitous route to effectively individual lawsuits, would practically eliminate the benefit of associational standing, and rather than minimizing "the participation of individual members in the lawsuit," *Hunt*, 432 U.S. at 343, would require each and every one of the members hoping to benefit from the suit to have joined before litigation started (and, consistent with the rest of the Government's argument, have been identified then as well).

The Government's approach is entirely inconsistent with the principles of representative suits such as associational cases or class actions, one of the chief benefits of which is that the contours of an organization's membership (or a class, in a class action) can grow or change over time to ensure a that the beneficiaries of a suit are those who are presently being harmed. *See, e.g.*, *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022) ("Every year, as new freshmen matriculate into Campbell and as seniors graduate, the membership of potentially 25% of the student body may be expected to turn over." "[T]he fact that the membership of a class changes over time makes joinder of every class member all the more impracticable."). The contrary position, "limiting the permanent injunction to relief for only current members and not future members would result in continuous litigation and be a waste of judicial resources as well as the time and resources of the litigants." *Christian Emps. All.*, 719 F. Supp. 3d at 927.

In some cases, extending relief to those who were not identified at the outset of a suit, or were not members then, serves an even more important function than to further judicial economy and avoid duplicative litigation. To give one particularly critical example, in *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, the D.C. Circuit held that an organization suing on behalf of terminally ill members seeking access to experimental treatments continued to have standing even though its original member-declarants had passed away:

Because of the nature of their predicaments, many of those Alliance members who were members on July 28, 2003, when the complaint was filed, have succumbed to their terminal illnesses. However, the allegations in the complaint supplemented by the affidavits supplied by the Alliance establish that at least one member has standing to pursue this challenge.

469 F.3d 129, 134 (D.C. Cir. 2006) (cleaned up). It appears to be the Government's position that an organization like the Alliance's standing would vanish the moment each of the individuals who were members at the time the suit was filed passed away, even if new individuals in a similar profile were constantly being added to the organization's membership.

That is contrary to the way courts have uniformly treated these issues in a variety of cases in which an individual's standing is more fleeting than an organization's. In such cases, courts, including the Supreme Court, have permitted associational litigants to identify new members on appeal in a variety of contexts where the originally identified members' claims might have become moot with the passage of time, a decision that would make no sense if those individuals could not support standing anyway because they were not members when the case was originally filed. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 285–86 (2015) (Scalia, J., dissenting) (describing supplementation of the record in *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007)); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680–81 (9th Cir. 2023); *Speech First, Inc. v. Sands*, 69 F.4th 184, 190 n.3 (4th Cir. 2023), *vacated as moot on other grounds*, 144 S. Ct. 675 (2024) (mem.). And in a series of Second Amendment challenges to restrictions on 18-to-20-year-olds, courts—including the Fifth Circuit—have uniformly concluded that associations can rely on a succession of different members for their standing, even where no single member would have had standing throughout and without regard to whether the later-identified members were members at the time the suit was filed. *See* Order, *Reese v. ATF*, No. 23-20033 (5th Cir. Jan. 30, 2024), Doc. 92-2; *see generally Reese v. ATF*, 127 F.4th 583 (5th Cir. 2025) (concluding that associations had shown federal ban

on handgun purchase by 18-to-20-year-olds was unconstitutional); *see also Worth v. Jacobson*, 108 F.4th 677, 686–87 (8th Cir. 2024) (finding organizational plaintiffs challenging a ban on 18-to-20-year-olds carrying firearms for self-defense "have an unbroken chain of standing" through successive member declarants); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 445–46 nn. 28–29 (3d Cir. 2025) (same). In one such case, the Government recently acknowledged that an organization had continued standing based on successively identified members, without regard to whether they were members at the time the suit was filed. *See* Br. of Federal Respondents at 4, *W. Va. Citizens Def. League, Inc. v. ATF*, No. 25-132 (U.S. Oct. 20, 2025) ("Petitioner correctly observes that this case does not present [a] mootness concern," because the association "has identified a member who was 19 years old as of May 21, 2025" and furthermore has "thousands of members" who it could additionally identify. (citation omitted)).

It is no surprise, in the face of this uniformity of views, that the Government has not cited a single case that adopts its member-with-standing-at-the-time-of-filing limitation on associational relief. Rather, it rests its argument on a fairness objection, claiming that the current system "create[s] the possibility of asymmetrical preclusion" as members of a victorious association are entitled to benefit from a resulting injunction while members of a group that brought an unsuccessful suit, unless they were plaintiffs themselves, are not precluded from bringing their own challenge. Gov't Br. at 11 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 403 (2024) (Thomas, J., concurring)). But again, this criticism only makes sense if one ignores that the actual parties before the court in this case are the associations, which *would have* been precluded from relitigating these issues against the federal government, had they lost. It is also an odd argument for the Government to advance, given that it is not itself bound with respect to non-parties when it loses, so it would hardly be inequitable to apply the same result to non-party

17

members of associational litigants. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) ("[N]onmutual offensive collateral estoppel simply does not apply against the government …").

In any event, this question, too, has no more than academic value in this suit. The Supreme Court has long recognized that at least in some circumstances members may not be bound by the results of associational litigation. *See UAW*, 477 U.S. at 290 ("Should an association be deficient [in representing the interests of their members], a judgment won against it might not preclude subsequent claims by the association's members without offending due process principles."). The Government's own authority in fact makes this clear. Justice Thomas's concurrence in *FDA*, which it cites as having flagged this concern, is not the law, and what is more, reaffirms that under governing precedent "[i]f a single member of an association has suffered an injury, our doctrine permits that association to seek relief for its entire membership." 602 U.S. at 399 (Thomas, J., concurring). The Court has ordered such relief here, and nothing in the Government's motion supports changing that.

## CONCLUSION

The Court should deny the Government's request for clarification or to amend the judgment.

Dated: November 18, 2025                                    Respectfully submitted,

R. Brent Cooper
TX Bar No. 04783250
Brent.cooper@cooperscully.com
S. Hunter Walton
TX Bar No. 24106548
hunterwalton@cooperscully.com
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 74202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

/s/ David H. Thompson
David H. Thompson
DC Bar No. 450503
dthompson@cooperkirk.com
Peter A. Patterson
DC Bar No. 998558
ppatterson@cooperkirk.com
Megan M. Wold
DC Bar No. 198005
mwold@cooperkirk.com
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

ATTORNEYS FOR PLAINTIFFS

19

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/ David H. Thompson
David H. Thompson