**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| FIREARMS POLICY COALITION, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States,<br><br>Defendant. | Case No. 4:24-cv-565-O |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO CLARIFY OR, IN THE ALTERNATIVE, TO MODIFY THE PERMANENT INJUNCTION

### INTRODUCTION

This Court's final judgment granting relief to Plaintiffs and their unknown members needs clarification or modification. As currently written, the Court's judgment is vague, unworkable, and conflicts with principles of standing and equity. Without knowing who any of Plaintiffs' members are, Defendant cannot know to whom the permanent injunction applies. And unless the Court's injunction is limited only to members of the organizational Plaintiffs when the operative complaint was filed, the scope of the final judgment is constantly changing and fluctuating. In response, Plaintiffs fail to rehabilitate the Court's judgment as currently written. *See generally* Pls.' Opp'n, ECF 40 ("Opp'n") (citing ECF pagination throughout).

### ARGUMENT

**I.     Without clarification or modification, the Court's judgment is vague and unworkable.**

Plaintiffs Firearms Policy Coalition, Inc. ("FPC") and Second Amendment Foundation ("SAF") first argue that caselaw permits an organizational plaintiff to seek and receive final relief

for its members, so long as the organization has established associational standing.[1] *See* Opp'n at 8–9 (citing Supreme Court and Fifth Circuit caselaw). But Defendant never argued otherwise. Under current caselaw, that legal proposition is uncontested. The issue here is not *if* the court can grant relief to members of the organizational Plaintiffs. The issue is *how* such relief can be granted. And granting final relief to unknowable and unverifiable members is vague and unworkable under the circumstances of this case, where the Court has enjoined the government from enforcing a federal criminal statute against an unidentified group of people.

"The judicial contempt power is a potent weapon." *Schmidt v. Lessard*, 414 U.S. 473, 476 n.2 (1974) (citation omitted). Thus, "Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Id.* District courts should also account for "what is workable" when fashioning equitable relief. *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (citation omitted). In *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1244–45 (10th Cir. 1989), organizational plaintiffs and several named individuals sued on behalf of themselves and the organizational plaintiffs' "members & subscribers." But the plaintiffs there did not "specify the names of the individual members . . . whose rights were allegedly violated." *Id.* The Tenth Circuit found such a tactic problematic in part because "the parties in this case [sought] to invoke the power of the federal court in an action raising serious claims and requesting substantial damages against the defendants, yet they desire[d] to remain anonymous . . . to the

---

[1] To preserve its appellate rights, the government appealed this Court's final judgment. *See* ECF 43. This Court still has jurisdiction to decide the Rule 59 motion for modification. *See Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 157 n.4 (2d Cir. 2001); *Ross v. Marshall*, 426 F.3d 745, 751–52 (5th Cir. 2005). And this Court still has jurisdiction to clarify its final judgment, because such clarification would be in aid of the appeal. *See Dixon v. Edwards*, 290 F.3d 699, 709 n.14 (4th Cir. 2002); *HHPI v. HHS*, 2023 WL 10669681, at *2 (D.D.C. Dec. 22, 2023).

defendants[.]" *Id.* at 1245 n.2.[2]   That same problem follows this Court's final judgment as currently written, which applies to a large swath of people that desire the benefit of the Court's remedies, yet remain unknown to the government.

Plaintiffs argue that prohibiting "enforce[ment]" of a criminal statute against all of Plaintiffs' unknown members is not vague, because the government can simply "ask" whether a given person is a member. Opp'n at 9–10. According to Plaintiffs, such a solution clears up all vagueness and "defeats the government's analogy to the cases it relies on for support." *Id.* at 9–10. But Plaintiffs' oversimplified solution does not fix the vagueness and administrability problems.

To start, the Court has enjoined Defendant from "enforcing" a federal criminal statute. The meaning of this directive is not clear and could arguably include a variety of antecedent investigative steps short of a formal charge in court that may precede an individual being identified as one of Plaintiffs' members. Plaintiffs respond by arguing that "enforcement" does not include preliminary investigative steps but encompasses things like "arrest; issuance of a warning, citation, or ticket; and referral for prosecution." Opp'n at 17 (quoting *Lederman v. United States*, 131 F. Supp. 2d 46, 64 (D.D.C. 2001)). That clarification is helpful, assuming it is an accurate statement of this Court's intent. But the plain meaning of "enforcement" is far from clear and faced with the potential for contempt, modification to the injunction is required.

Plaintiffs then assert that "the injunction should not be interpreted to reach actions taken before the government is informed that an individual is a member of FPC or SAF." Opp'n at 17. Such an amendment to the Court's final judgment would be a welcome first step. But it still would

---

[2] Defendant notes that the Tenth Circuit found that naming the organization's unknown "members & subscribers" as plaintiffs violated Federal Rule of Civil Procedure 10. *Gibbs*, 886 F.2d at 1244–45.

not fix all the vagueness and administrability problems, because Defendant has *no* means of verifying the accuracy of an individual's claim to membership. Plaintiffs allege that individuals are "highly incentivized" to tell the truth about their membership because a "material falsehood is a felony." Opp'n at 18. But the incentives run in the opposite direction: individuals facing a potential felony for violating 18 U.S.C. § 930(a) are likely incentivized to circumvent prosecution by claiming they are a member of FPC or SAF. That is especially the case since, without knowing who is a member protected by the injunction, Defendant would have no basis to question or promptly verify any individual's claim to membership.

Plaintiffs go on to argue that relying on individuals facing a potential felony to tell the truth will work because "the Government already relies on people to tell the truth" on government forms "with respect to other firearms restrictions." Opp'n at 18. As an example, Plaintiffs point to an ATF form that asks whether an individual is an unlawful user of or addicted to any controlled substance. *Id.* (citing ATF Form 4473). Plaintiffs' analogy to government forms misses the mark. Self-reports may be a good source, or the best available source, of one kind of information in one context but a poor or inferior source of other information in other contexts. Here, Plaintiffs know with accuracy who is protected by the injunction. Only the government lacks that information. To ensure compliance with the Court's injunction, the government cannot simply guess who is protected by the injunction, and relying on contemporaneous, unverifiable self-reports is unworkable in this context for the reasons just discussed.

The federal government highlights again that, as a general policy, it does not seek to compel disclosure of a private organization's membership and does not ask the Court to do so here. Instead, the government leaves the scope of FPC's and SAF's remedy in their own hands. The government does not object if FPC and SAF decline to identify a single member to benefit from the judgment.

The government simply asks that the judgment apply only to verified members the organizations have identified in this litigation, because the government lacks any way to adequately comply with an injunction prohibiting enforcement against unknown individuals. The organizational Plaintiffs cannot have it both ways. They cannot simultaneously decline to identify which of their members are protected by the judgment and at the same time insist that the Court enjoin the government from enforcing the law against those unidentified persons.

Plaintiffs also attempt to distinguish the cases the government relies on in its opening brief. Opp'n at 10–12. That attempt fails.

a. In *American Red Cross v. Palm Beach Blood Bank, Inc.*, the court found an injunction impermissibly vague on two fronts. 143 F.3d 1407, 1411–12 (11th Cir. 1998). First, the challenged injunction enjoined "contacting and/or soliciting donations from any donor whose name is contained on Plaintiff's lists." *Id.* at 1411 (citation omitted). The Eleventh Circuit found that this directive violated Rule 65 because the defendant had "no way to determine whether a given member of the public might happen to appear on a Red Cross list *not in [the defendant's] possession*." *Id.* (emphasis added). The same problem applies here: the government has no way to determine and verify whether a given person suspected of violating 18 U.S.C. § 930(a) is a verified member of FPC or SAF. Plaintiffs provide no response to this part of the Eleventh Circuit's decision. Plaintiffs only attempt to distinguish the second vague provision of the challenged injunction in *Palm Beach Blood Bank*, which enjoined the defendant from possessing or using "any other documents that contain trade secrets that are the proprietary property of Plaintiff." *Id.* at 1412 (emphasis omitted). However, for the second provision, the Eleventh Circuit determined that a proper injunction would have enjoined possessing or using plaintiff's lists or any other

confidential documents "*identified* by the district court." *Id.* (emphasis added). That is exactly what Defendant asks for here: that the injunction reach only those "identified" as Plaintiffs' members.

b.    In *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, the district court entered an injunction that prohibited the defendants from contacting plaintiff's current or proposed customers.   408 F.2d 1108, 1116 (8th Cir. 1969). The court found the injunction "excessively vague" because neither the court's fact findings nor the injunction itself "determin[ed] the identity of the customers or proposed customers" so that it was "unclear whom the defendants may or may not contact." *Id.* Plaintiffs try to distinguish this holding by again claiming that the government can just ask if a given person is a member of FPC or SAF. But as explained above, that does not fix the problem because the potential breadth of the injunction could forbid preliminary investigative steps unless the government knows and can verify who is protected by the injunction.

c.    In *NLRB v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers, Loc. Union 327*, the NLRB entered an order that applied "to any employer within the whole jurisdiction of Local 327." 419 F.2d 1282, 1283 (6th Cir. 1970) (per curiam). The court found the injunction impermissibly vague "in relation to persons expected to obey it" and in defining "the jurisdiction of Local 327 and thus it provides no means of defining the people for whom protection is sought." *Id.* Plaintiffs attempt to distinguish this case by claiming that the injunction here is limited to "Plaintiffs' members," which sufficiently defines them as a group. Opp'n at 11. But a member-only limitation lacks legal significance when the identities of the members are unknown.

In sum, to ensure that the final judgment is workable and complies with Rule 65, the Court's declaratory judgment and permanent injunction should be limited in scope to members of the organizational Plaintiffs who have been identified and verified as members.

**II.    Without clarification or modification, the Court's judgment conflicts with *CASA*.**

In a landmark decision this year, the Supreme Court held that district courts cannot grant relief "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.* 606 U.S. 831, 861 (2025). The "complete relief" functions not as a floor but as a ceiling; it is not a "guarantee" but the "maximum a court can provide." *Id.* at 854. Plaintiffs argue that if the practical result of the Court's injunction is that the government must stop enforcement of § 930(a) everywhere to avoid guessing about who is covered by the injunction (*i.e.*, a universal injunction), then such an injunction complies with *CASA*. Opp'n at 12–14. But Plaintiffs' interpretation of *CASA* is wrong for at least two reasons. First, if this Court can provide narrower relief to FPC and SAC that still provides them complete relief, it must provide the narrower relief under *CASA*. And here, this Court can still provide complete relief to FPC's and SAC's members by clarifying or modifying its order to apply to those whom Plaintiffs have identified and verified as members. Had Plaintiffs wanted to secure broader relief, they could have sought to certify a class action; if successful, that would have provided relief to the class (named and unnamed). But Plaintiffs did not pursue that path, so under *CASA*, they are limited to securing relief for their identified members who have standing.

Second, the practical effect of Plaintiffs' argument is that nearly any organization could evade *CASA*'s holding in nearly every case by suing without disclosing its members' names, then obtaining an injunction protecting unknown individuals that forces the government to choose between halting enforcement everywhere or being at constant risk of contempt. Indeed, the Sixth Circuit has recognized that associational standing risks becoming a "backdoor way" to grant universal injunctions. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021) (quotation marks omitted). The Sixth Circuit expressly raised concerns with injunctions that do not "identify the nonparties entitled to [the injunction]." *Id.* Similarly, the Eighth Circuit has

held that an organization cannot sue and obtain relief "on behalf of *unnamed members.*" *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) (emphasis added).   And in his concurrence in *CASA*, Justice Alito joined by Justice Thomas cautioned lower courts from granting relief akin to what Plaintiffs seek in this case. *See CASA*, 606 U.S. at 866–68 (Alito, J., concurring).

Plaintiffs claim that this Court's injunction is similar to injunctions "very recent[ly]" entered. Opp'n at 11. But the cases Plaintiffs rely on all predate *CASA* except one. The only case that post-dates *CASA* is *Planned Parenthood Fed'n of Am., Inc. v. Kennedy*, 792 F. Supp. 3d 227 (D. Mass. 2025), *appeal filed*, No. 25-1755 (1st Cir.,  Aug. 6, 2025). That case does not help Plaintiffs. There, the district court granted relief to Planned Parenthood and its "members." *Id.* at 271. But Planned Parenthood's members are not a secret; they are known and verifiable entities like Planned Parenthood Massachusetts and Planned Parenthood Utah. *Id.* at 243. Thus, the court there granted relief to known, verifiable members, which is exactly what this Court should do here.

Plaintiffs' reliance on historical practices also does not help them.  Opp'n at 15–16. Historically, an association could sue on behalf of its members so long as it could "represent the rights and interests of the whole." *See* Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof*, § 97 (C.C. Little & J. Brown 1840). The early examples of such relief involved associations suing on behalf of their members to vindicate the group's *shared* interests. For example, in *Beatty v. Kurtz*, the Supreme Court allowed church members on behalf of themselves and all other church members to seek an injunction against a defendant who was interfering with the church's cemetery. 27 U.S. (2 Pet.) 566, 585 (1829) (Story, J.). The Court reasoned that the suit was proper because it was "one of those cases, in which certain persons, belonging to a voluntary society, and having a common interest, may sue in behalf of themselves and others having the like interest, as part of the same society; for purposes common to all, and beneficial to

all." *Id.* There, the identity of the unnamed church members was not required, because enjoining the defendant from trespassing and interfering with the church cemetery necessarily benefited the collective group (named and unnamed members). But here, the Court's injunction concerning enforcement of a criminal statute does not have the same effect, because the government does not enforce the criminal statute against the group but against the individual. And without knowing who is protected by the injunction, the government cannot distinguish between those individuals against whom enforcement would or would not be permissible. *Cf. Lloyd v. Loaring*, 31 Eng. Rep. 1302, 6 Ves. Jun. 773, 778 (1802) (finding that "individuals forming a voluntary society may as individuals" sue to assert their property interests, but could not sue "as a voluntary society" to assert those interests). Thus, this Court's judgment should only protect disclosed and verified members, as that is consistent with Supreme Court precedent, Rule 65, and historical practices.

### III.    Without a temporal limitation, the Court's judgment conflicts with principles of standing and equity.

Under principles of standing, this Court should clarify that its judgment is limited to members of the organizational plaintiffs when suit was filed. Plaintiffs argue that standing "has nothing to do with the ultimate relief" a court can provide. Opp'n at 19. But Plaintiffs are wrong. First, standing requires the court to ensure not only that Plaintiffs have a concrete injury but that the injury can be *remedied* by the court, thereby intertwining standing with the scope of relief. Second, courts have repeatedly recognized that standing affects what kind of relief courts can provide. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[P]laintiff must demonstrate standing separately for each form of relief sought."); *Whitman v. Soc. Sec. Admin.*, 2025 WL 1357428, at *5 (E.D. Va. Apr. 1, 2025) (finding that standing "affects consideration of Plaintiff's claims and the scope of relief"), *report and recommendation adopted*, 2025 WL 1699346; *Fla. Decides Healthcare, Inc. v. Byrd*, 790 F. Supp.

3d 1335, 1350 n.14 (N.D. Fla. 2025) ("Standing and scope of relief are related, but different, and this Court intends to frame any injunction so that it does not reach broader than necessary to afford the parties relief to which they may be entitled.").

Plaintiffs claim that, because the mootness doctrine at times permits consideration of factual development after the suit was filed, this Court should also be permitted to provide relief to any and every person who joins FPC or SAF in the future. Opp'n at 20–21. But, unlike standing, the mootness doctrine has limited relevance to the scope of relief. Rather, the mootness inquiry asks whether there is still a live case or controversy at all.

But even if standing does not require such a temporal limitation, principles of equity do. "Equity is concerned with justice not only for the plaintiff but also for the defendant." Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 468 (2017). As previously explained in Defendant's opening brief, without any temporal limitation on this Court's final judgment, membership could become a ticket to prosecutorial immunity; any non-member investigated or charged under 18 U.S.C. § 930(a) could join FPC or SAF after the fact and potentially expose the government to contempt if it proceeds with prosecution. Tellingly, Plaintiffs provide no response to this problem, because such a result is plainly inequitable. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). Therefore, in accordance with principles of standing and equity, this Court should clarify or modify the scope of its declaratory judgment and permanent injunction to persons who were members of the organizational Plaintiffs at the time suit was filed.

## CONCLUSION

For these reasons and for those outlined in the opening brief, Defendant respectfully requests that the Court clarify or modify its declaratory judgment and permanent injunction.

Dated: December 12, 2025           Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch

*/s/ Samuel S. Holt*
SAMUEL S. HOLT (CO Bar # 59613)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 674-9761
Fax: (202) 616-8460
Email: Samuel.Holt2@usdoj.gov

*Counsel for Defendant*